UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x   ECF Case
TREVOR GRIFFITH,

                        Plaintiff                   Complaint

        -against-                            Index No. 05 CIV. 4210

THE CHILDREN'S AID SOCIETY and GARY      Judge Casey
DAWYOT,                                                     Magistrate Judge Pitman

                        Defendants
-----------------------------------------------------------------x

      Plaintiff Trevor Griffith by his attorney Joel Field, Esq. as and for his complaint against the defendants THE CHILDREN'S AID SOCIETY and GARY DAWYOT respectfully alleges as follows:

## JURISDICTION AND VENUE

      FIRST: Plaintiff TREVOR GRIFFITH ("Plaintiff") invokes the jurisdiction of the Court as follows:

      a. With respect to his First Claim for Relief against defendant THE CHIDREN'S AID SOCIETY ("Society") under and by virtue of 28 U.S.C. Sections 1331 and 1343 for the purpose of recovering the damages, consisting of but not limited to back pay as well as compensatory, costs of suit and attorney fees that were and continue to be sustained as a result of Society's violation of his rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000-e et seq. ("Title VII");

      b. With respect to his Second Claim for Relief as and against Society under and by virtue of the doctrine of pendant jurisdiction and as and against the individual defendant GARY DAWYOT ("Dawyot") pursuant to 28 U.S.C. Section 1332

1

in that such individual maybe a citizen of a state other than the State of New York, where plaintiff is a citizen, and in that the amount in dispute between the plaintiff and Dawyot is of a sum in excess of Fifty Thousand ($50,000) Dollars excluding interest and in that Dawyot maybe a citizen of the State of New York, where plaintiff is a citizen, pursuant to 28 U.S.C. Section 1367 (a) as amended all for the purpose in the Second Claim for Relief of recovering damages consisting of but not limited to back pay as well as compensatory that result from Society and Dawyot's violation of plaintiff's rights under the Human Rights Law of the State of New York as amended, to wit: Section 290 et seq. of the Executive Law; and

      c. With respect to his Third Claim for Relief as and against Society under and by virtue of the doctrine of pendant jurisdiction and as and against Dawyot pursuant to 28 U.S.C. Section 1332 in that Dawyot maybe a citizen of a state other than the State of New York, where plaintiff is a citizen and in that the amount in dispute between plaintiff and Dawyot is of a sum in excess of Fifty Thousand ($50,000) Dollars excluding interest and in that Dawyot maybe a citizen of the State of New York where plaintiff is a citizen pursuant to 28 U.S.C. Section 1367 (a) as amended all for the purpose in the Third Claim for Relief of recovering damages consisting of, but not limited to, back pay, compensatory and punitive as well as attorney fees that were and continue to be sustained that result from Society and Dawyot's violation of plaintiff's rights under the New York City Human Rights Law, Administrative Code of the City of New York Section 8-101 et seq.

   d. With respect to his Fourth Claim for Relief as and against Society under and by virtue of the doctrine of pendant jurisdiction for the purpose of recovering pursuant to Article 6 of the Labor Law of the State of New York the wage supplements due plaintiff in the form of earned but unpaid vacation pay all together with liquidated damages, reasonable attorney fees and costs.

   SECOND: The acts committed by Society and Dawyot (collectively "Defendants") pertaining to the violation of plaintiff's rights as hereinafter described and alleged, occurred within the Southern District of the State of New York, to wit: the State, City and County of New York where plaintiff was employed by Society as a Facilities Maintenance Technician from in and about February 2002 until his termination on or about May 4, 2004 and where plaintiff reported to Dawyot. The venue of this action pursuant to Section 1391 of Title 28 U.S.C. therefore lies within the geographic area of the United States District Court for the Southern District of New York.

**The Parties**

   THIRD: Plaintiff Jean Francois originally from the West Indies is a member of the Black race. Plaintiff was employed by Society as a Facilities Maintenance Technician from in and about February 2002 until his termination on or about May 4, 2004.

   FOURTH: Upon information and belief defendant Children's Aid Society is a not for profit social services agency existing either under the laws of the State of New York and/or is authorized to do business in the State of New York and at the material times hereinafter alleged operated and continues to operate several centers throughout the

metropolitan area of the City of New York for the purpose of providing various services to qualified children and their families.

FIFTH: Upon information and belief defendant Gary Dawyot who is White at the material times hereinafter alleged was and continues to be a resident of the State of New York and at the material times hereinafter alleged was and continues to be employed by Society as the Director of its Engineering Department which upon further information and belief in addition to individuals employed as Building Superintendents and Maintenance Men assigned to a specific location includes Facilities Maintenance Technicians whose duties and responsibilities are not limited to a single area or location.

## FACTUAL AVERMENTS

SIXTH: Plaintiff repeats and realleges each and every allegation set forth in paragraphs FIRST through FIFTH as though hereinafter fully set forth.

SEVENTH: Plaintiff, a West Indian and member of the Black race, commenced his employment as a Facilities Maintenance Technician ("Maintenance Technician") with Society in its engineering department on and about February 25, 2002 and was thereafter continuously employed in that capacity at Society until his termination on or about May 4, 2004.

EIGHTH: Plaintiff as a Society employee earned and was entitled after his initial year of employment twenty-four vacation days each year of employment which accrued at the rate of two days each month.

NINTH: Upon information and belief while maintenance technicians along with building maintenance employees and superintendents comprise Society's engineering department, the duties and responsibilities of the maintenance technicians encompass all

4

of the Society's locations unlike the duties and responsibilities of general maintenance employee and superintendents who are assigned to a specific location where they perform general and routine janitorial and building maintenance services.

TENTH: Upon information and belief and at the material times hereinafter alleged Dawyot who is White was and continues to be the Director of the engineering department.

ELEVENTH: Upon further information and belief and at the material times hereinafter alleged maintenance technicians were and continue to be supervised by a White manager, Fred Safarovic ("Safarovic") and the building superintendents by another White manager, Frank Fortado ("Fortado").

TWELFTH: Plaintiff upon becoming employed as a maintenance technician and at the material times hereinafter alleged was the only Black employed in that capacity and upon information and belief except for an individual terminated approximately a year before plaintiff was hired, was the only Black ever to be employed by Society as a maintenance technician.

THIRTEENTH: Upon information and belief management considered plaintiff to be if not its most skilled, then one of its most skilled maintenance technicians, exhibiting knowledge that was not only above expectation but a keenness in acquiring new knowledge so as to allow him to be able to take on new assignments.

FOURTEENTH: Upon information and belief plaintiff not only had excellent attendance and consistently reported for work early but was always available for overtime as well as to take, if necessary, the "extra mile" in order to complete assignments.

FIFTEENTH: Society shortly after employing plaintiff hired Libardo Loiza ("Loiza") who upon information and belief had originally come from South America as a part time maintenance technician.

SIXTEENTH: Loiza hired in and about the middle of 2002 continued to be employed part time until in and about the latter part of 2002 when he left and thereafter returned to work full time until in and about May 2003. Upon information and belief Loiza continues to be employed by Society as a maintenance technician.

SEVENTEENTH: Upon information and belief Society at the material times hereinafter alleged has publicized to its employees that employee conduct comprising discrimination as well as harassment on the basis of race, color, ethnicity, disability, religion, national origin, age, gender, veteran status, sexual orientation, citizenship or any other category protected by law was strictly prohibited.

EIGHTEENTH: Upon information and belief employees believing they have been subjected to prohibited discrimination and/or harassment are encouraged without fear of retaliation to report such discrimination and/or harassment to management.

NINETEENTH: Plaintiff after becoming employed as a maintenance technician was subjected by the other maintenance technicians to name calling and derogatory racial remarks which in particular, after he had been employed as a part time employee, was orchestrated by Loiza.

TWENTIETH: Plaintiff after Loiza was initially employed complained about the derogatory behavior and racial name calling that was taking place and to which he was being subjected and as a result of management speaking to the maintenance technicians this behavior, after Loiza left as a part time employee, greatly diminished only again later

6

to resume when Loiza returned as a full time employee in and about May 2003 and was often assigned to work with or in close proximity to plaintiff.

TWENTY-FIRST: Dawyot together with Safarovic met in and about October 2003 with plaintiff and Loiza for the purpose of discussing issues that had arisen since Loiza a few months earlier had been rehired.

TWENTY-SECOND: Dawyot informed plaintiff in and about January 2004 that management recognized his technical competence and skills and accordingly desired to retain his services. Plaintiff was additionally told that employees were never to use racial or derogatory remarks and that if plaintiff continued to experience racial, prejudicial or offensive remarks, management should be contacted.

TWENTY-THIRD: Loiza's racially harassing offensive conduct continued and on or about April 21st, plaintiff once again complained that Loiza was using racially derogatory terms as well as physically interfering with his ability to perform his duties and responsibilities. Dawyot assured plaintiff that the situation would be corrected.

TWENTY-FOURTH: Dawyot, contrary to his earlier direction that management was to be contacted in the event plaintiff continued to experience racial, prejudicial or offensive remarks and despite Society's invitation to employees to report racial discrimination as well as harassment, failed to address plaintiff's complaint of again being subjected to prohibited racially offensive conduct and instead on or about May 4th, terminated plaintiff's employment on the pretext of misconduct.

TWENTY-FIFTH: Upon information and belief plaintiff was terminated by Dawyot because of his opposition to Loiza's racially offensive conduct and his insistence that management take appropriate action to have Loiza cease.

7

TWENTY-SIXTH: Plaintiff when terminated had earned and was entitled to receive several weeks of vacation for the services that had theretofore rendered while employed by Society. Plaintiff has neither received nor been paid for that earned but unused vacation

**AS AND FOR A FIRST CLAIM FOR RELIEF
AS AND AGAINST DEFENDANT THE
CHILDREN'S AID SOCIETY**

TWENTY-SEVENTH: Plaintiff repeats and realleges each and every allegation set forth in paragraphs FIRST through FIFTH, SEVENTH, and NINTH through TWENTY-FIFTH as though hereinafter fully set forth.

TWENTY-EIGHTH: On or about May 11, 2004, plaintiff filed charges with the New York State Division of Human Rights charging that Society in terminating his employment had violated the New York State Human Rights Law – Article 15 of the New York State Executive Law and in addition had violated Title VII of the Civil Rights Act of 1964 as amended.

TWENTY-NINTH: Title VII of the Civil Rights Act of 1964 in pertinent part provides as follows:

> It shall be an unlawful employment practice for an employer –
>
> (1) to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color . . . or national origin. Section 2000e-2(a)
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter. Section 2000e-3(a) .

THIRTIETH: Plaintiff on or about September 28, 2004, was informed that the New York State Division of Human Rights was dismissing his complaint and closing its file however since plaintiff had filed his charge under both the New York State Human Rights Law as well as Title VII, he could request review by the Equal Employment Opportunity Commission whose responsibility is the enforcement of Title VII.

THIRTY-FIRST: Plaintiff acting in a timely fashion requested review by the Equal Employment Opportunity Commission and by notice dated February 3, 2005 was informed that the EEOC had adopted the findings of the New York State Division of Human Rights and that it was closing its file on plaintiff's charge under Title VII. Plaintiff was additionally informed that he had ninety days of receipt of the notice from the EEOC to institute Court action. Plaintiff has instituted this action within ninety days of the receipt of the aforesaid notice.

THIRTY-SECOND: Society's acts and conduct as heretofore described by terminating plaintiff's employment because of his race and/or color and/or in retaliation for having complained of Loiza's continuing racial, prejudicial and offensive remarks and requesting management to have Loiza cease comprised and continues to comprise acts of employment discrimination based upon race and color and as such violated and continues to violate Title VII of the Civil Rights Act of 1964 as amended.

THIRTY-THIRD: Society by terminating plaintiff's employment acted deliberately and willfully in that the termination was purposefully based upon plaintiff's race and/or race related reasons in violation of plaintiff's rights under Title VII of the Civil Rights Act of 1964 as amended.

THIRTY-FOURTH: Plaintiff as a result of the aforesaid acts of discrimination which resulted in his being retaliated against and then terminated because of his complaints of race discrimination and/or because of his race has and continues to suffer the effects of invidious discrimination and has and continues to lose substantial earnings and other emoluments of employment as well as being forced to suffer and endure humiliation and embarrassment, all in an amount that cannot be presently calculated.

## AS AND FOR A SECOND CLAIM FOR RELIEF AS AND AGAINST DEFENDANT THE CHILDREN'S AID SOCIETY AND GARY DAWYOT

THIRTY-FIFTH: Plaintiff repeats and realleges each and every allegation set forth in paragraphs FIRST through FIFTH, SEVENTH, NINTH through TWENTY-FIFTH, TWENTY-EIGHTH and THIRTIETH through THIRTY-FIRST as though hereinafter fully set forth.

THIRTY-SIXTH: Section 296(1)(a) of the Executive Law of the State of New York provides that:

> It shall be an unlawful discriminatory practice:
> For an employer . . . because of the race, creed, color, national origin . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

THIRTY-SEVENTH: Section 296(6) of the Executive Law of the State of New York provides that:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

THIRTY-EIGHTH: Society's acts and conduct as heretofore described to wit: terminating plaintiff's employment upon information and belief because of his race and/or color and/or in retaliation for having complained of Loiza's continuing racial, prejudicial and offensive remarks and requesting management to have Loiza cease comprised and continues to comprise acts of employment discrimination based upon race, creed, color and/or national origin and as such violated and continues to violate the New York State Human Rights Law, to wit: Section 296(1)(a) of the Executive Law.

THIRTY-NINTH: Dawyot's acts and conduct in treating plaintiff because of his race in a different manner than other employees under his supervision and in terminating plaintiff for a pretextual reason aided and abetted Society in engaging in the committing of acts and conduct forbidden under the New York State Human Rights Law.

FORTIETH: Dawyot's acts and conduct as described herein violated Section 296(6) of the New York State Human Rights Law in that such acts and conduct constituted the aiding and abetting of acts forbidden under the New York State Human Rights Law.

FORTY-FIRST: Plaintiff as a result of the aforesaid acts of discrimination which resulted in his being terminated because of his race, creed, color and/or national origin has and continues to suffer the effects of invidious discrimination and has and continues to lose substantial earnings and other emoluments of employment as well as being forced to suffer and endure humiliation and embarrassment, all in an amount that cannot be presently calculated.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## AS AND AGAINST DEFENDANTS THE CHILDREN'S
## AID SOCIETY AND GARY DAWYOT

FORTY-SECOND: Plaintiff repeats and realleges each and every allegation set forth in paragraphs FIRST through FIFTH, SEVENTH, and NINTH through TWENTY-FIFTH as though hereinafter fully set forth.

FORTY-THIRD: Section 8-107(1)(a) of the New York City Administrative Code provides that:

> It shall be an unlawful discriminatory practice:
>
> For an employer or agent thereof . . . because of the race, creed, color, national origin . . . of any person, . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment.

FORTY-FOURTH: Section 8-107(6) of the New York City Administrative Code provides that:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

FORTY-FIFTH: Society's acts and conduct as heretofore described to wit: terminating plaintiff's employment upon information and belief because of his race and/or color and/or in retaliation for having complained of Loiza's continuing racial, prejudicial and offensive remarks and requesting management to have Loiza cease comprised and continues to comprise acts of employment discrimination based upon race, creed, color and/or national origin and as such violated and continues to violate the New York City Human Rights Law, to wit: Section 8-107(1)(a) of the New York City Administrative Code.

FORTY-SIXTH: Dawyot's acts and conduct in treating plaintiff because of his race in a different manner than other employees under his supervision and in terminating plaintiff for a pretextual reason aided and abetted Society in engaging in the committing of acts and conduct forbidden under the New York City Human Rights Law.

FORTY-SEVENTH: Dawyot's acts and conduct as described herein violated Section 8-107(6) of the New York City Human Rights Law in that such acts and conduct constituted the aiding and abetting of acts forbidden under the New York City Human Rights Law.

FORTY-EIGHTH: Plaintiff as a result of the aforesaid acts of discrimination which resulted in his being terminated because of his race, creed, color and/or national origin has and continues to suffer the effects of invidious discrimination and has and continues to lose substantial earnings and other emoluments of employment as well as being forced to suffer and endure humiliation and embarrassment, all in an amount that cannot be presently calculated.

**AS AND FOR A FIRST CLAIM FOR RELIEF
AS AND AGAINST DEFENDANT THE
CHILDREN'S AID SOCIETY**

FORTY-NINTH: Plaintiff repeats and realleges each and every allegation set forth in paragraphs FIRTH through FIFTH, SEVENTH through EIGHTH and TWENTY-SIXTH as though hereinafter fully set forth.

FIFTIETH: Society has and continues to fail to pay plaintiff the unpaid vacation benefits that he had earned prior to his termination and which he had not continues not to receive.

FIFTY-FIRST: Plaintiff when employed by Society was employed neither in an executive, administrative or professional capacity.

FIFTY-SECOND: Society's failure to pay plaintiff the vacation pay he had earned and not otherwise received at the time of his termination was and continues to be willful.

FIFTY-THIRD: Section 190(1) of the Labor Law of the State of New York provides in pertinent part that:

> . . . The term 'wages' . . . includes benefits or wage supplements as defined in section one hundred ninety-eight c of this Article.

FIFTY-FOURTH: Section 198-c(2) of the Labor Law of the State of New York provides in pertinent part that:

> . . . The term 'benefits or wage supplement' includes but is not limited to . . . vacation . . . pay.

FIFTY-FIFTH: Section 198 of the Labor Law of the State of New York provides in pertinent part that:

> 1. In any action instituted upon a wage claim by an employee . . . in which the employee prevails the court may allow such employee in addition to ordinary costs a reasonable sum not exceeding fifty dollars for expenses which may be taxed as costs . . .
>
> 1-a. In any action instituted upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees and upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

FIFTY-SIXTH: Society's failure to plaintiff the vacation moneys that he had earned violated and continues to violate the Labor Law of the State of New York and plaintiff as a result thereof has been damaged.

14

WHEREFORE, Plaintiff TREVOR GRIFFITH prays that this Court under his first claim for relief finds that he has and continues to suffer from acts caused by defendant THE CHILDREN'S AID SOCIETY and its agents, servants and employees all contrary to his rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000-e et seq., and that this Court under his second claim for relief finds that he has and continues to suffer from acts caused by defendants THE CHILDREN'S AID SOCIETY and its agents, servants and employees and GARY DAWYOT and his agents all contrary to his rights under the New York State Human Rights Law, Section 296 of the Executive Law and that this Court under his third claim for relief finds that he has and continues to suffer from acts caused by defendants THE CHILDREN'S AID SOCIETY and its agents, servants and employees and GARY DAWYOT and his agents all contrary to his rights under the New York City Human Rights Law, Section 8-107(1)(a) of the New York City Administrative Code and that this Court under his fourth claim for relief finds that he has continues to suffer from acts caused by defendant THE CHILDREN'S AID SOCIETY and its agents, servants and employees in failing to pay him his earned and unused vacation moneys in violation of the Labor Law of the State of York and that this Court grant the following relief:

a. A money judgment award in favor of plaintiff TREVOR GRIFFITH and against defendant THE CHILDREN'S AID SOCIETY under Title VII of the Civil Rights Act of 1964 as amended in an amount to be determined at trial for the pecuniary losses plaintiff has and continues to incur as a result of being discriminated against because of his race, color and/or national origin, including, but not limited to, back pay and all other emoluments of employment all computed with interest from on and about

May 4, 2004 the date of his termination, to the date that he is unconditionally offered a position comparable to or better than the position from which he was discriminatorily terminated as well as compensatory damages as provided under Section 1981a of Title 42 of the United States Code;

 b. A money judgment award in favor of plaintiff TREVOR GRIFFITH against defendants THE CHILDREN'S AID SOCIETY and GARY DAWYOT jointly and severally under the New York State Human Rights Law – Section 290 et seq. of the Executive Law of the State of New York in an amount to be determined at trial for the pecuniary losses plaintiff has and continues to incur as a result of being discriminated against because of his race, color and/or national origin, including, but not limited to, back pay and all other emoluments of employment all computed with interest from on and about May 4, 2004, the date of his termination to the date that he is unconditionally offered a position comparable to or better than the position from which he was discriminatorily terminated as well as compensatory damages in an amount to be determined at trial for the mental distress, anguish, pain and suffering as experienced by plaintiff as a result of the defendants' wrongful conduct as provided under the New York State Human Rights Law;

 c. A money judgment award in favor of plaintiff TREVOR GRIFFITH and against defendants THE CHILDREN'S AID SOCIETY and GARY DAWYOT jointly and severally under the New York City Human Rights Law – Section 8-101 et seq. of the New York City Administrative Code in an amount to be determined at trial for the pecuniary losses plaintiff has incurred and continues to incur as a result of being discriminated against because of his race, color and/or national origin, including, but not

limited to, back pay and all other emoluments of employment all computed with interest from on and about May 4, 2004 the date of his termination to the date that he is unconditionally offered a position comparable to or better than the position from which he was discriminatorily terminated as well as compensatory and punitive damages as provided under the New York City Human Rights Law;

     d. A money judgment award in favor of plaintiff TREVOR GRIFFITH and against defendant THE CHILDREN'S AID SOCIETY in and amount to be determined at trial for the vacation moneys earned by plaintiff prior to his termination and not paid by defendant THE CHILDREN'S AID SOCIETY all in violation of the Labor Law of the State of New York together with liquidated damages equal to one-fourth of the vacation moneys recovered and attorney fees incurred in recovering said vacation moneys.

     e. An allowance for the plaintiff's costs and disbursements incurred in the prosecution of this action including his reasonable attorney fees and disbursements; and

     f. Such other and further equitable and legal and affirmative relief as the Court may deemed to be just and proper in the circumstances.

     JOEL FIELD, Esq.

     Attorney for Plaintiff TREVOR GRIFFITH
     Westchester Financial Center
     50 Main Street
     White Plains, New York 10606
     (914) 997-7400

     Joel Field (JF-2158)

PLEASE TAKE NOTICE that Plaintiff TREVOR GRIFFITH herewith demands trial by jury of all issues so triable in this action.

---------------------------
Joel Field (JF-2158)

.